IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| JEROME E. and GLENDA F. HETRICK, ) | |
| ) | CASE NO. BK11-80283-TLS |
| Debtor(s).  ) | A11-8045-TLS |
| FIRST NEBRASKA EDUCATORS CREDIT ) | |
| UNION, ) | |
| ) | |
| Plaintiff, ) | CHAPTER 7 |
| ) | |
| vs. ) | |
| ) | |
| JEROME E. and GLENDA F. HETRICK, ) | |
| ) | |
| Defendants. ) | |

ORDER

     This matter is before the court on the debtor-defendants' motion for summary judgment (Fil. No. 35) and objection by the plaintiff (Fil. No. 37). Samuel J. Turco, Jr., represents the debtors, and Justin A. Roberts represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

     The motion is denied.

     The Hetricks signed a home equity line of credit agreement with the plaintiff credit union in January 2006 and gave as collateral a deed of trust on a rental house they owned. The deed of trust had a future advance clause to secure additional withdrawals on the line of credit. In February and March 2010, the Hetricks withdrew the maximum of $20,000.00 available on the line of credit. They repaid $900.00 of that amount. Both before and after filing their Chapter 7 bankruptcy petition, the Hetricks led the credit union to believe they would surrender the property to mitigate their damages. They did not do so, and the credit union filed this adversary proceeding to except the debt from discharge under 11 U.S.C. § 523(a)(2)(A) for fraud, as well as to deny the debtors a discharge under 11 U.S.C. § 727(a)(2)(A) for hindering, delaying, or defrauding the credit union by transferring or concealing property within one year before the petition date, and under 11 U.S.C. § 727(a)(5) for failing to satisfactorily explain the loss of the money advanced. The credit union also asks the court to "prevent the Debtors from abusing process under Section 105(a)." The Hetricks have now moved for summary judgment.

     Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary

proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008). *See also Celotex Corp.*, 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

The following facts are uncontroverted or are established by the record:

1. The plaintiff, First Nebraska Educators Credit Union, is a credit union incorporated in the State of Nebraska and doing business in Douglas County, Nebraska.

2. The defendants, Jerome and Glenda Hetrick, are residents of Douglas County, Nebraska.

3. Mr. Hetrick owned a roofing business.

4. The Hetricks are the owners of a rental home located at 5385 North 27th Avenue, Omaha, Nebraska, legally described as Lots 43 and 44, Ellistone Park Place Supplement, an Addition to the City of Omaha, as surveyed, platted and recorded in Douglas County, Nebraska.

5. On or about January 16, 2006, the Hetricks obtained a home equity line of credit from the credit union, providing for a $20,000 revolving credit line secured to the rental property listed above.

6. On or about April 26, 2007, or shortly thereafter, a third party, Bank of the West or its agents, paid the balance of the revolving line of credit owed to the credit union to zero dollars.

7. The line of credit remained open.

8. On or about February 10, 2010, the Hetricks obtained $16,000 from the credit union pursuant to the home equity line of credit. Subsequently, the Hetricks made four additional transactions, accessing $1,000 each time on February 12, 2010; March 1, 2010; March 18, 2010; and March 22, 2010.

9. The funds were deposited into the roofing company's checking account and were spent.

10. The Hetricks made payments on the line of credit of $300 on April 9, 2010; May 12,

2010; and June 8, 2010, for a total of $900.

    11.  In September 2010, the credit union was notified that the Hetricks intended to file a Chapter 7 case.

    12.  In December 2010, counsel for the credit union requested that the Hetricks turn over the key to the property. No keys were turned over.

    13.  The Hetricks filed this Chapter 7 proceeding on February 11, 2011.

    14.  The credit union and Bank of the West became involved in state court litigation to determine the parties' respective lien priorities.

    According to the evidence submitted by the credit union, the Hetricks applied for a $20,000 home equity line of credit in January 2006. Among their assets were their residence, a leased 2004 Jeep, a 2000 Chevrolet pick-up, a 1991 Ford van, and four rental houses on a block of North 27th Avenue in Omaha, which ranged in value from $8,700 to $48,700. The application, with an initial advance of $5,000, was approved. A deed of trust, with future advance clause and assignment of rent rider, was recorded on January 23, 2006, against the home at 5385 North 27th Avenue, which the debtors valued at $48,700.

    In February 2007, the Hetricks applied to Bank of the West for a loan to refinance loans on the rental houses. When the credit union received Bank of the West's request for the payoff amount, the credit union contacted the Hetricks, who said, according to the credit union's file notes, that they were "[c]onsolidating 3 rental loans due to 3 vacancies. Getting 7.1% rate. Planning on keeping HELOC open."

    In April 2007, Bank of the West paid off the loan held by the credit union in the amount of $19,794.88. Bank of the West's deed of trust on 5385 North 27th Avenue was recorded on May 2, 2007.

    In February and March 2010, the Hetricks withdrew the full amount of their line of credit at the credit union. They made minimum monthly payments on the loan in April, May, and June 2010. In July 2010, they obtained a loan of $28,485 from SAC Federal Credit Union to purchase a 2010 Dodge Nitro vehicle. They pay $450 per month on that loan, and have reaffirmed the debt in the bankruptcy case.

    In January 2011, when the credit union renewed its efforts to obtain the keys to 5385 North 27th Avenue in order to evaluate the condition of the property and show it to prospective buyers, the debtors said they could not locate the keys. They now state that they believe the keys either are lost or a tenant changed the locks. They say they have not intentionally withheld the keys.

    The credit union premises its complaint on four sections of the Bankruptcy Code. The elements of each are set forth below.

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *R & R Ready Mix v. Freier (In re Freier)*, 604 F.3d 583, 587 (8th Cir. 2010). To have the debt excepted from discharge, the creditor must prove that the debtors obtained money or property from the creditor concurrently with the debtors' misrepresentation. *Marcusen v. Glen (In re Glen)*, 639 F.3d 530, 533 (8th Cir. 2011).

The credit union asserts that the Hetricks' 2010 withdrawals on the line of credit without advising the credit union of the 2007 Bank of the West deed of trust or any changes in the condition or value of the collateral constitute false representations, and, had the credit union known of the changed circumstances, it likely would not have authorized the withdrawals.

The credit union takes the position that the Hetricks were obligated to report to it any material changes in their financial condition or in the value of the secured property. However, the credit union did not require the debtors to submit regular financial statements or otherwise formally report on their financial circumstances.

In addition to the factual issue of whether the debtors' actions or omissions constituted false representations, there is also a factual question as to whether the credit union's reliance on the alleged false representations was justifiable. "Justifiable reliance" is a lower standard than "reasonable reliance," entailing no duty to investigate. *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 423 B.R. 309, 314 (B.A.P. 8th Cir. 2010) (citing *Field v. Mans*, 516 U.S. 59 (1995)). However, a creditor cannot rely upon false representations if the falsity is obvious. *Id.* at 315. A determination of whether the credit union's reliance in 2010 on the 2006 property value and title and the Hetricks' purported obligation to advise of changes was justifiable, particularly since the credit union was aware of the subsequent loan from Bank of the West, will require further inquiry.

Section 727 of the Bankruptcy Code addresses circumstances under which the discharge of all debts may be denied. Denial of a discharge is a harsh penalty and, accordingly, § 727 is to be strictly construed in favor of the debtor. *Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011). Section 727(a)(2) states, in relevant part, that:

> (a) The court shall grant the debtor a discharge, unless —
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —

(A) property of the debtor, within one year before the date of the filing of the petition[.]

To prevail on the complaint, the plaintiff must show that (1) the debtors' actions took place within twelve months prior to the filing of their petition for bankruptcy relief; (2) the debtors took the actions with the intent to hinder, delay or defraud their creditors; (3) the debtors themselves took the actions; and (4) the debtors' actions consisted of transferring or concealing property. *Georgen-Running v. Grimlie (In re Grimlie)*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010); *City Nat'l Bank of Ft. Smith, Ark. v. Bateman (In re Bateman)*, 646 F.2d 1220, 1222 (8th Cir. 1981). The standard of proof for denial of discharge under § 727 is the preponderance of evidence standard. *Kaler v. Craig (In re Craig)*, 195 B.R. 443, 448-49 (Bankr. D.N.D. 1996).

The debtor's actual, subjective intent to hinder, delay or defraud is a requisite element of denial of a discharge. *Helena Chem. Co. v. Richmond (In re Richmond)*, 429 B.R. 263, 304 (Bankr. E.D. Ark. 2010). Factors to consider in determining whether a debtor acted with intent to hinder, delay or defraud: (1) lack or inadequacy of consideration; (2) family, friendship or other close relationship between the transferor and transferee; (3) retention of possession, benefit or use of the property in question; (4) financial condition of the transferor prior to and after the transaction; (5) conveyance of all of the debtor's property; (6) secrecy of the conveyance; (7) existence of trust or trust relationship; (8) existence or cumulative effect of pattern or series of transactions or course of conduct after the pendency or threat of suit; (9) instrument affecting the transfer suspiciously states it is bona fide; (10) debtor makes voluntary gift to family member; and (11) general chronology of events and transactions under inquiry. *MWI Veterinary Supply Co. v. Rodgers (In re Rodgers)*, 315 B.R. 522, 531 (Bankr. D.N.D. 2004).

The credit union argues that the debtors' actual intent is evidenced by their pattern of conduct, specifically
- their granting of a second lien on the property;
- their failure to inform the credit union of the second lien on the collateral, leading to a priority dispute between the lenders;
- their failure to give the credit union access to the house despite their stated intention to surrender the property;
- their withdrawal of the full amount of the line of credit;
- their minimum repayments on the line of credit, which the credit union suggests was done merely to keep their account in good standing so they could obtain a new car loan from another lender; and
- their reaffirmation of the car loan.

Before reaching the issue of intent, however, the credit union must prove that the Hetricks "transferred, removed, destroyed, mutilated, or concealed" the collateral, as required by the statute. Most conduct that results in a denial of discharge under this section involves a transfer of title or possession, or the physical relocation of personal property. It is unclear from the reported caselaw whether the alleged denial of access to real property falls within the statute's scope. That element is a fact-specific determination to be made at trial.

Section 727(a)(5) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." When the plaintiff proves each element, the burden shifts to the debtor to explain the loss. *Vilhauer*, 458 B.R. at 514. The debtor's explanation must be definite enough to convince the court that the assets are not missing. *S. Bancorp S. v. Richmond (In re Richmond)*, 430 B.R. 846, 880 (Bankr. E.D. Ark. 2010).

The Hetricks assert that the funds drawn from the line of credit were deposited in Mr. Hetrick's business checking account and used for business expenses. The transfer of funds to a debtor's business to pay business expenses may be a sufficient explanation of the disappearance or depletion of assets. *Stifel, Nicolaus & Co. v. Smithson (In re Smithson)*, 372 B.R. 913, 923 (Bankr. E.D. Mo. 2007) (citing *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 765-66 (B.A.P. 8th Cir. 2002)). However, the credit union takes issue with the debtors' characterization of some of the expenditures as business expenses. Because factual issues exist on whether the funds are "missing" for purposes of this section of the Code, summary judgment must be denied.

Finally, section 105 of the Bankruptcy Code does not create a private cause of action. *Dunbar v. Cox Health Alliance, LLC (In re Dunbar)*, 446 B.R. 306, 310 (Bankr. E.D. Ark. 2011). It is an avenue for the court to exercise its equitable powers to redress violations of its orders, the Bankruptcy Code, or the procedural rules. It often is used to impose sanctions for a party's contempt, in conjunction with a motion for sanctions. No such motion is at issue here, and the plaintiff can be afforded sufficient relief under the specifically pleaded subsections of §§ 523 and 727.

After considering the parties' evidence and arguments, I find the motion for summary judgment must be denied because genuine issues of material fact exist on the plaintiff's causes of action.

IT IS ORDERED: The debtor-defendants' motion for summary judgment (Fil. No. 35) is denied. The Clerk of the Bankruptcy Court shall schedule the matter for trial.

DATED:    March 1, 2012

BY THE COURT:

 /s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
   *Samuel J. Turco, Jr.
   Justin A. Roberts
   U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.